MISKIMON v MISKIMON

Docket No. 98973. Submitted April 7, 1988, at Detroit. Decided
    December 5, 1988.

    Plaintiff, Timothy A. Miskimon, and defendant, Margaret A.
    Miskimon (now Margaret A. Laurin), were divorced in 1980 by
    order of the Genesee Circuit Court. Custody of the parties' two
    minor children was granted to defendant and plaintiff was
    ordered to pay $120 each week in child support. Plaintiff moved
    to the State of Florida and by 1982 had accumulated an
    arrearage of $2,500 in support payments. Defendant initiated
    proceedings pursuant to the Revised Uniform Reciprocal En-
    forcement of Support Act and a Florida court subsequently
    ordered plaintiff to pay $325 per month in child support. In
    1984 the Florida court determined that plaintiff had satisfied
    any arrearage under the Michigan judgment and that he had,
    in fact, overpaid his support obligation under the judgment. In
    1985 defendant petitioned the Genesee Circuit Court to amend
    the divorce judgment to provide for a higher amount of child
    support payments and requested the circuit court for a ruling
    on the effect of the Florida court order on the child support
    provisions of the divorce judgment. The circuit court, Earl E.
    Borradaile, J., on November 24, 1986, ruled that the Florida
    support order did not modify the Michigan judgment and that
    arrearages could continue to accumulate under the judgment.
    The circuit court on February 5, 1987, also ordered plaintiff to
    pay $288 per week in child support for the period February 1,
    1986, through January 1, 1987, and $225 per week after Janu-
    ary 1, 1987. Plaintiff appealed.

    The Court of Appeals *held:*

    1. Under the Revised Uniform Reciprocal Enforcement of
Support Act, the original order of support rendered in the court

REFERENCES

Am Jur 2d, Desertion and Nonsupport §§ 117 *et seq.*

Divorce and Separation §§ 1078 *et seq.*

Divorce: power of court to modify decree for support of child which
    was based on agreement of parties. 61 ALR3d 657.

Construction and effect of provisions of Uniform Reciprocal Enforce-
    ment of Support Act that no support order shall supersede or
    nullify any other order. 31 ALR4th 347.

of the initiating state is unaffected by an order subsequently rendered in the responding state, except that payments made under the subsequent order shall be credited against payments accruing or accrued under the original order. An arrearage under the original order may accumulate where, as here, the subsequent foreign support order calls for payments in an amount less than that required by the original order.

2. The determination of whether to increase or decrease child support pursuant to a petition to modify an order of child support is addressed to the discretion of the trial court. In this case, defendant sustained her burden of presenting evidence establishing a change in circumstances justifying a retroactive increase in child support and the circuit court, therefore, did not abuse its discretion in modifying its child support order.

Affirmed.

1. Parent and Child — Child Support — Revised Uniform Reciprocal Enforcement of Support Act.

Under the Revised Uniform Reciprocal Enforcement of Support Act, the original order of child support rendered in the court of the initiating state is unaffected by orders subsequently rendered in the responding state, except that payments made under the subsequent order shall be credited against payments accruing or accrued under the original order (MCL 780.171; MSA 25.225[21]).

2. Parent and Child — Child Support — Modification of Child Support.

The determination of whether to increase or decrease child support pursuant to a petition to modify an order of child support is addressed to the discretion of the trial court.

*Neithercut, Klapp, Shegos, Dillard & Banas* (by *James C. Dillard*), for plaintiff.

*Bellairs, Dean, Cooley, Siler & Moulton* (by *Richard E. Cooley*), for defendant.

Before: Doctoroff, P.J., and Cynar and P. D. Houk,* JJ.

P. D. Houk, J. Plaintiff Timothy A. Miskimon

* Circuit judge, sitting on the Court of Appeals by assignment.

appeals from a February 13, 1987, order which modified the parties' judgment of divorce. He raises two claims of error: (1) the trial court misinterpreted the antinullification provision of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), MCL 780.151 *et seq.*; MSA 25.225(1) *et seq.*; and (2) the trial court erred in ordering a retroactive increase in plaintiff's child support obligations. We affirm.

On September 2, 1980, the parties were granted a judgment of divorce. Custody of the two minor children was granted to defendant Margaret A. Miskimon, also known as Margaret A. Laurin. Plaintiff was granted visitation rights and ordered to pay $120 in weekly child support. This amount was based upon the finding that plaintiff's net pay was $360 per week.

At the time of the divorce, both parties resided in the State of Michigan. After the divorce, plaintiff moved to Florida. According to the Genesee County Friend of the Court records, by January, 1981, plaintiff was approximately $1,500 in arrears for the child support payments; by February, 1982, the arrearage totaled approximately $2,500.

Defendant filed a complaint, pursuant to the RURESA, for the enforcement of the arrearage payments. The complaint was properly certified and sent to the responding state, Florida, for further proceedings. On September 15, 1982, a Florida circuit court judge ordered plaintiff to pay $325 per month for child support. Plaintiff began payment of this amount. Under MCL 780.171; MSA 25.225(21), these payments were also credited against the 1980 Michigan judgment of support.

In May, 1984, the same Florida circuit court held that plaintiff was not in arrears under the Michigan judgment and, in fact, had overpaid $2,067.52 under that judgment. It also held that

plaintiff owed $630 under the Florida support order.

Plaintiff subsequently moved from Florida to the State of Washington. His income increased substantially from 1983 through 1985, to average $65,000 per year, although it was anticipated to decrease to approximately $50,000 in 1987.

On October 10, 1985, defendant petitioned to amend the judgment of divorce by increasing child support. Apparently, while investigating defendant's claim for increased child support, the Genesee County Friend of the Court discovered that, as of April 1, 1986, plaintiff's arrearages totaled approximately $12,000. Defendant moved that the arrearages be set off against the $12,500 indebtedness that defendant owed plaintiff as equity in the former marital home. She also moved for a specific order with regard to the effect of the Florida support order on the Michigan judgment.

In a pretrial memorandum dated September 10, 1986, the trial court stated that, in its opinion

> the responding state can make a provision for support to be paid that is lower than the original order set by the Michigan court, but that neither modifies nor changes the previous court order and the amounts paid on the order of the responding states [sic] are merely applied toward the support but do not act to forgive or do away with any arrearage which may be accumulating or that may have accrued.

The trial court gave effect to this opinion when it held in a November 24, 1986, hearing that the Florida support order did not modify the Michigan judgment and that arrearages could continue to accumulate under the Michigan judgment. In reaching this holding, the court specifically rejected the May, 1984, decision of the Florida cir-

cuit court. Therefore, defendant was granted partial summary disposition as to the order on the effect of the Florida support order. Her other arguments, including the request for an increase in child support, were denied summary disposition.

After a February 5, 1987, bench trial, plaintiff was ordered to pay $288 weekly for child support retroactively from February 1, 1986, through January 1, 1987. Starting January 1, 1987, plaintiff was required to pay $225 per week in support.

Plaintiff's first claim of error is that the trial court misinterpreted the RURESA's antinullification (also referred to as the antisupersession) provision when it held that the 1982 Florida support order did not modify the 1980 Michigan judgment. Plaintiff argues that the payments that he made on the Florida order, which were credited in Michigan, completely satisfied his support obligation and no arrearage could accumulate.

Before the substance of this argument can be analyzed, two other issues must be discussed. First, it should be noted that the meaning of the antinullification provision, MCL 780.171; MSA 25.225(21), was substantially changed by the 1985 amendments. Since the amendments related only to remedy or procedure, they may be given retrospective construction. See *Borkus v Michigan National Bank,* 117 Mich App 662, 668-669; 324 NW2d 123 (1982), lv den 417 Mich 998 (1983); *Franks v White Pine Copper Division,* 422 Mich 636, 672; 375 NW2d 715 (1985), reh den sub nom *Chambers v General Motors Corp,* 424 Mich 1202 (1985).

Second, we expressly adopt the position that a trial court, in a responding state, may enter its own prospective support order which differs in amount from the foreign support order. This ruling is in keeping with the vast majority of states which have addressed the issue. See *Thompson v*

*Thompson,* 366 NW2d 845, 847 (SD, 1985). Although this rule does not apply to the instant case since, here, Michigan is the initiating state, the corollary of the rule applies in that a Michigan court must now determine the effect of a foreign order which set a lower amount of child support than did the Michigan judgment.

The antinullification provision provides:

> A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state. [MCL 780.171; MSA 25.225(21).]

An ambiguity exists in this provision in that it only speaks to nullification, and does not clarify whether a support order can be modified. Thus, the following two scenarios are possible: (1) the Florida support order modifies and, in effect, replaces, the Michigan judgment from the date of issuance of the Florida order, onward; or (2) the Florida order exists separately from the Michigan judgment, which remains unmodified. Under the second scenario, any payments made under the Florida order are credited against the Michigan judgment, but arrearages can accumulate pursuant to the Michigan judgment.

Under generally recognized principles of statutory construction, if an ambiguity exists, it is this Court's duty to give effect to the intent of the Legislature in enacting the statute. *Santia v Bd of*

*State Canvassers,* 152 Mich App 1, 5; 391 NW2d 504 (1986), quoting *Pittsfield Twp v City of Saline,* 103 Mich App 99, 104-105; 302 NW2d 608 (1981). To resolve a perceived ambiguity, a court will look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. *Id.* Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce a harmonious and consistent result. *Id.*

As stated in MCL 780.152; MSA 25.225(2), "[t]he purposes of this act are to improve, extend, and make uniform by reciprocal legislation the enforcement of duties of support." The act is procedural only, it does not create any duties of family support. It is concerned solely with the enforcement of the already existing duties when the obligee is in one state and the obligor is in another. See Anno: *Construction and effect of provision of Uniform Reciprocal Enforcement of Support Act that no support order shall supersede or nullify any other order,* 31 ALR4th 347, 351; *Fitzwater v Fitzwater,* 97 Mich App 92, 96; 294 NW2d 249 (1980). The RURESA's provisions set forth the rules that govern the two-state proceedings.

Although the question whether an original judgment is modified by a foreign support order is one of first impression in the State of Michigan, other jurisdictions have previously dealt with this problem. See 31 ALR4th 347, *supra.* We agree with those courts which have held that an initiating state is not bound by the terms of a foreign support order when calculating arrearages due under the original judgment of support.

MCL 780.154; MSA 25.225(4) states that "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." There-

fore, the foreign support orders provide additional, supplementary, or cumulative remedies, and do not nullify, supersede, or modify the original support decree. See *Thompson, supra.* Under this reasoning, the original support order is only affected by the payments credited to it pursuant to the antinullification provision. See *Banton v Mathers,* 159 Ind App 634; 309 NE2d 167 (1974), citing *Howard v Howard,* 191 So 2d 528, 531 (Miss, 1966); See also *Oglesby v Oglesby,* 29 Utah 2d 419; 510 P2d 1106 (1973). The reason for the credit is to prevent duplication of payment. *Ainbender v Ainbender,* 344 A2d 263, 265 (Del Super, 1975). An obligor is not relieved of his duties under the original order, and he is entitled to a credit for only the amounts he has actually paid. *Banton, supra.* Therefore, an arrearage can accumulate if the foreign support order calls for payments which are less than the amount owing under the original order.

We recognize that some courts, including our own, see *Fitzwater, supra,* have used the word "modify" when discussing the impact of a foreign support order. However, to paraphrase the *Oglesby* court, we believe that such term was used in the sense that the *amount* of support may be modified, but not the *decree* of the initiating state. See *Oglesby,* 510 P2d 1107. Since the effect of the foreign support order is prospective only, it does not modify the original judgment.

This ruling is not unfair to plaintiff since he could have moved, in the Michigan courts, to decrease his support obligations. See MCL 552.17; MSA 25.97. This approach would not involve the RURESA. The trial judge did not err in finding that arrearage appropriately accumulated under the 1980 Michigan judgment of divorce.

In his second argument, plaintiff claims that the trial court erred in amending the judgment of divorce to retroactively increase child support since his income was expected to decrease from its 1983-1985 levels. It is within the discretion of a trial court to order an increase or decrease in child support any time after the petition for modification has been filed. *Cochran v Buffone,* 137 Mich App 761, 766; 359 NW2d 557 (1984). We find that defendant sustained her burden to present evidence establishing a change in circumstances justifying a retroactive increase in child support.

Affirmed.